U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

 - 9 2013

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SAMSUNG AUSTIN                  §
SEMICONDUCTOR, LLC,             §
                                §
          Plaintiff,            §
                                §
VS.                             §   NO. 4:12-CV-688-A
                                §
INTEGRATED AIRLINE              §
SERVICES, ET AL.,               §
                                §
          Defendants.           §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion to remand filed by
plaintiff, Samsung Austin Semiconductor, LLC ("SAS").  Having
considered plaintiff's motion, the responses of defendants,
Integrated Airline Services ("IAS Air"), IAS Logistics DFW, LLC
("IAS Logistics"), ENC Cargo Dallas, Inc. ("ENC Dallas"), and
ENC, Inc. ("ENC"), plaintiff's reply, all supporting appendices
and documents, and applicable legal authorities, the court
concludes that defendants have not proved by a preponderance of
the evidence that federal question jurisdiction pursuant to 28
U.S.C. § 1331 exists, and that the motion to remand should be
granted.

I.

## Background and Procedural History

Plaintiff initiated this action by filing its original
petition against defendants in the District Court of Tarrant
County, Texas, 96th Judicial District, as Cause No. 096-260933-
12.   Defendants removed the action to this court, alleging
subject matter jurisdiction pursuant to 28 U.S.C. § 1331.
Defendant contends that plaintiff's claims fall within the scope
of the Convention for the Unification of Certain Rules for
International Carriage by Air ("Montreal Convention"), and are
therefore completely preempted by federal law.   Plaintiff asserts
that it has alleged only state law claims that do not fall within
the Montreal Convention's scope, and that the case should be
remanded to the state court from which it was removed.

The following factual allegations are made in plaintiff's
petition:

Plaintiff purchased an LT-PEOX Producer mainframe unit and
related equipment (collectively, "equipment") for $2,708,100.00.
On December 19, 2011, the equipment was shipped from Singapore to
Dallas-Fort Worth International Airport ("DFW") by Singapore
Airlines.   Upon arriving at DFW, the equipment was unloaded and
moved  by representatives of IAS Air or IAS Logistics to a
warehouse "owned and operated by IAS Air and/or IAS Logistics."

2

Notice of Removal, Ex. 2, at 3.  On December 21, 2011, IAS Air
issued a delivery ticket "indicating that carriage by air had
ceased and the unit was delivered by Singapore Airlines in good
order and condition."  Id.  ENC, which had been hired by
plaintiff to pick up the equipment and transport it from DFW to
plaintiff's facility in Austin, Texas, made arrangements with IAS
Logistics to pick up the equipment at the warehouse.  During the
process of preparing the equipment for the transport, a forklift
operator employed by either IAS Air or IAS Logistics "attempted
to lift the unit with one forklift, in violation of standard
operating procedures and despite being instructed to wait for a
second forklift to assist in the operation, and as a result
dropped the unit, causing severe and irreparable damage."  Id.

Based on such facts, the petition alleges that defendants
breached the duty of care they owed to plaintiff as a bailee
under Texas law.

## II.

### The Motion to Remand and Responses

The basis of the motion to remand is that plaintiff has
alleged only state law claims, that the facts alleged do not fall
within the scope of the Montreal Convention, and therefore
defendants cannot establish that plaintiff's claims arise under
the laws of the United States, as required to invoke this court's

jurisdiction.  In their responses, defendants contend that the damage to plaintiff's equipment occurred within airport boundaries and while the equipment was in the charge of the carrier, and therefore plaintiff's claims fall within the scope of the Montreal Convention.

II.

Analysis

A.   Removal

Defendants, as the parties invoking federal court removal jurisdiction, bear the burden of establishing that this court has jurisdiction over the claims.  Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995); Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).  "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns. . . ."  Carpenter, 44 F.3d at 365 (internal citations omitted).  The court, therefore, must strictly construe the removal statute.  See id.  When, as here, removal is sought under 28 U.S.C. § 1441(b), the right of removal depends on the existence of a claim or claims within the federal question jurisdiction of the court.  See id.  Remand is proper when there is any doubt as to the existence of federal jurisdiction.  Cyr v. Kaiser Found. Health Plan of Texas, 12 F. Supp.2d 556, 565 (N.D.

Tex. 1998); Samuel v. Langham, 780 F. Supp. 424, 427 (N.D. Tex. 1992).

The existence of federal question jurisdiction is determined by applying the "well-pleaded" complaint rule. Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983). Under the rule, the existence of jurisdiction is determined solely from what appears on the face of plaintiff's complaint. Id. at 10. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987). "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. at 392.

An exception to the well-pleaded complaint rule exists where there is complete preemption of the state claim by federal law. Id. at 393. Complete preemption applies only in extraordinary circumstances when Congress intends not only to preempt certain state law, but to replace it with federal law. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987); Willy, 855 F.2d at 1165. Complete preemption requires a clearly manifested intent

5

by Congress to make causes of action removable to federal court.

Aaron v. National Union Fire Ins. Co., 876 F.2d 1157, 1163 (5th

Cir. 1989); Willy, 855 F.2d at 1166.   In Caterpillar, the Supreme

Court explained:

> On occasion, the Court has concluded that the
> preemptive force of a statute is so "extraordinary"
> that it "converts an ordinary state common-law
> complaint into one stating a federal claim for purposes
> of the well-pleaded complaint rule." Metropolitan Life
> Insurance Co., supra, at 65, 107 S.Ct. 1542.   Once an
> area of state law has been completely pre-empted, any
> claim purportedly based on that pre-empted state law is
> considered, from its inception, a federal claim, and
> therefore arises under federal law.   See Franchise Tax
> Board, supra at 24, 103 S.Ct. 2841 ("[I]f a federal
> cause of action completely pre-empts a state cause of
> action any complaint that comes within the scope of the
> federal cause of action necessarily 'arises under'
> federal law").

482 U.S. at 393 (footnote omitted).

The Montreal Convention, where applicable, has been

determined to completely preempt state law claims that fall

within its scope.   See El Israel Airlines, Ltd. v. Tsui Yuan

Tseng, 525 U.S. 155, 169 (1999); Mbaba v. Societe Air France, 457

F.3d 496, 500 (5th Cir. 2006).   One of the chief purposes of the

Montreal Convention is to achieve uniformity of rules governing

international carriage, and it applies to "all international

transportation of persons, baggage, or goods performed by

aircraft for hire."   Mbaba, 457 F.3d at 497.   See also King v.

American Airlines, Inc., 284 F.3d 352 (2d Cir. 2002).   Thus, if

the court were to conclude that the Montreal Convention applies

to plaintiff's claims in this case, state law claims would be

preempted and federal question jurisdiction would exist.

However, unless defendants can meet their burden for removal and

show by a preponderance of the evidence that the Montreal

Convention applies, the court must remand the action to the state

court from which it was removed.   See <u>McNutt v. Gen. Motors

Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); <u>New Orleans & Gulf

Coast Ry. Co. V. Barrios</u>, 533 F.3d 321, 327 (5th Cir. 2008).

B.   <u>Scope of the Montreal Convention</u>

The Montreal Convention applies when cargo is damaged during

"carriage by air," which is defined as the "period during which

cargo is in the charge of the carrier," Montreal Convention, S.

Treaty Doc. No. 106-45, art. 18, at ¶ 1, and further explained:

> The period of the carriage by air does not extend to
> any carriage by land, by sea or by inland waterway
> performed outside an airport.  If, however, such
> carriage takes place in the performance of a contract
> for carriage by air, for the purpose of loading,
> delivery or transhipment, any damage is presumed,
> subject to proof to the contrary, to have been the
> result of an event which took place during the carriage
> by air.

Art. 18, ¶ 3.  Liability of carriers for cargo damaged during

carriage by air is limited by Article 22, and calculated based on

the weight of the cargo.  Article 30 states that if an action is

brought against an agent or servant of the carrier, acting within

the scope of employment, then such agent or servant "shall be
entitled to avail themselves of the conditions and limits of
liability which the carrier itself is entitled to invoke under
this Convention." Art. 30, at ¶ 1.  Once carriage by air has
ceased, the Montreal Convention no longer applies.  Carriage by
air has been held to have ended once a carrier has entrusted the
delivery of the cargo to a trucking company or other independent
agency.  See Victoria Sales Corp. V. Emery Air Freight, Inc., 917
F.2d 705, 710 (2d Cir. 1990).[1]

Plaintiff contends that carriage by air had already ended
when the equipment was damaged.  In support of its contention,
plaintiff argues that the cargo had been delivered in good
condition to the warehouse by Singapore Airlines and its agent,
and that plaintiff was the one who had made arrangements for the
equipment to be transferred from the warehouse to the truck for
transportation and delivery to plaintiff's facility.  Plaintiff
also contends that it can show that the damage occurred after air
carriage had ceased by producing such documents as the delivery
ticket, tracking information showing when and where the shipment

---

[1] The Montreal Convention, adopted by the United States in 2003, supersedes the Convention for
the Unification of Certain Rules Relating to International Transportation by Air, otherwise known as the
Warsaw Convention ("Warsaw Convention"), which had been in place in the United States since 1934..
See S. Treaty Doc. No. 106-45; 49 U.S.C. § 40105.  Thus, while there is relatively little case law
regarding the Montreal Convention, courts have looked to cases interpreting similar provisions of the
Warsaw Convention.  See e.g., Am. Home Assurance Co. v. Kuehne & Nagel (AG & CO.) KG, 544 F.
Supp.2d 261 (S.D.N.Y. 2008).

was delivered and that it was in good condition, and investigation reports that plaintiff and the carrier produced.

Defendants contend that when the cargo was damaged, it was under the control of IAS Air in its capacity as agent for the carrier, and that an employee of IAS was responsible for the damage. Defendants have included in their appendix: (1) an agreement between the carrier and IAS Air in which IAS Air would provide certain ground handling services; (2) a document issued by Singapore Airlines listing ENC as the consignee for the equipment; and (3) a transportation and logistics agreement between plaintiff and ENC, signed in April 2010. Defendants also provided the affidavit of Thomas Wheeling ("Wheeling"), president of IAS Air, and the declaration of Seung Ho Lee ("Lee"), general manager of ENC.

Defendants are correct in their argument that if damage occurs to the cargo in an international shipment while the cargo is in the charge of the carrier's agent, then the Montreal Convention applies. E.g., <u>Am. Home Assurance Co. v. Kuehne & Nagel (AG & CO.) KG</u>, 544 F. Supp.2d 261 (S.D.N.Y. 2008). However, defendants have not provided sufficient evidence to establish by a preponderance of the evidence that the cargo was in the charge of the carrier or the carrier's agent. There appears to have been a ground handling agreement between the

carrier and IAS Air, but such an agreement cannot demonstrate that IAS Air was acting in its agency capacity when the equipment was damaged, or that IAS was solely responsible for the damage. The other documents provided are similarly deficient. The affidavit and declaration provided by defendants likewise are unhelpful, as neither Wheeling nor Lee state that they were personally present when the damage occurred. It is defendants' burden as the removing parties to establish that this court has jurisdiction over plaintiff's claims. The court concludes that defendants have not met their burden, and that the case should be remanded to the state court from which it was removed.

III.

Order

Therefore,

The court ORDERS that plaintiff's motion to remand be, and is hereby, granted, and that is action be, and is hereby, remanded to the state court from which it was removed.

SIGNED January 9, 2013.

JOHN McBRYDE
United States District Judge